C. C. McMahel, Appellee, v. Jacob T. Smith, Appellant.

Opinion filed September 6, 1934.

M. J. WHITE, for appellant.

FRANK FORNOFF, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Appellee brought an action in debt in the circuit court of Wabash county against appellant to recover

the statutory penalty of one-third the value of personal property alleged to have been sold by appellant under a chattel mortgage in which appellee was mortgagor and appellant mortgagee, the basis of the action being the alleged failure of appellant, as mortgagee, to comply with the provisions of section 2, Cahill's 1933 Statutes, ch. 95, ¶ 28.

This case was before this court at a previous term and reversed and remanded on questions of pleading. 258 Ill. App. 53.

The case went to trial upon the second and third counts, referred to in the former opinion, and the general issue. At the close of all the evidence, on motion of appellee, the court directed the jury to return a verdict for one-third the value of the property as they found such value from the evidence. The verdict was for $1,333.33, judgment was entered on the verdict and this appeal followed.

Appellant's grounds for reversal are that the court erred in directing a verdict for the reason that there was a controverted question of fact for the jury as to whether appellant's taking possession of the property and making a sale thereof was a foreclosure under the powers contained in the mortgage, and that certain statements made by appellee to appellant at the time of the surrender of the property to appellant constituted a waiver by appellee of all rights given him, as mortgagor, including the right to have notice and report as provided by said paragraph 28. Appellant admits that he did not give notice or make report in accordance with said section.

The property described in the mortgage consisted of equipment used in the operation of a bakery. The mortgage contained the following covenants, "said mortgagor to keep said property insured for benefit of mortgagee" and provided that "until default in the performance of said conditions said mortgagor may

retain possession of said goods and chattels, but if such default be made, or said mortgagee, or assigns, with or without apparent cause, feel insecure then said mortgagee may without suit take possession of said goods and chattels, wherever found, and sell the same at public auction or private sale, retain the amount of said note and all expenses, and pay the surplus to said mortgagor.''

Appellee breached the mortgage by his failure to keep the property insured. On January 25, 1929, appellant, accompanied by the sheriff, went to appellee's shop and appellant then told appellee that he had come to take possession. Appellant's testimony is that appellee then said to him, ''What's the matter with you that you are getting after that?—I don't understand,'' to which appellant replied, ''I can't help it. I mean what I am telling you.'' Nothing further was said, and by agreement they were to meet later that same evening. Appellant returned about 7 p. m. with a Mr. Beck. Appellee testifies that appellant then said, ''I have brought Mr. Beck in here to watch things tonight.'' Appellant's version of this conversation is as follows: ''He (appellee) said, 'What do you mean by this anyhow?' I said, 'I mean just what I told you. I have to do this. I can't put up with this any longer.' He said, 'Well, if you hadn't been so easy on me, I might have paid you. I will just turn this over to you and you may do what you please with it.' He then turned around. Mr. Beck and I walked to back part. Mr. Beck stayed there and I went home.''

The following morning a Mr. Ballard came to the shop and demanded the keys. Appellee refused and told Ballard that Smith was the only one he would deliver the keys to. Ballard left and in a few minutes returned accompanied by appellant. Appellee's version of the conversation that then followed, is: ''Are you (appellant) taking over this equipment in compli-

ance with the terms of the chattel mortgage? He said, 'Yes.' I said, 'Well, I guess I will have to give you the key.' I shoved it over the counter to him and he shoved it to the other man.'' Appellant's testimony is, ''When I went up there the next day McMahel said to me, 'Did you sell this to Ballard?' I said, 'He will be in charge from now on,' so he turned the keys over to him and I walked out. He did not inquire of me if I had taken the property under the terms of the chattel mortgage. He said nothing to me about it.''

We have quoted at length all the evidence as to what was said in all the conversations. In considering the error assigned it will be necessary to look at the evidence in its most favorable light to appellant and to grant him all reasonable inferences that can be drawn therefrom. *Walldren Express & Van Co. v. Krug*, 291 Ill. 472; *American Art Works v. Chicago Picture Frame Works*, 264 Ill. 610; *Vail v. Graham*, 259 Ill. App. 172.

There can be no recovery under said paragraph 28 unless there has been a sale under a power contained in the mortgage, and the burden of proving such fact rested upon appellee. *McMahel v. Smith*, 258 Ill. App. 53.

The first step necessary for appellant to take to foreclose his mortgage was to obtain possession, and the uncontradicted evidence is that he went to appellee's shop for that purpose. He was then exercising his rights under the mortgage. On cross-examination he said, ''The only right I had to this property was the fact that I had a chattel mortgage on it. I went up there with the sheriff to take possession under my chattel mortgage.''

It is uncontradicted that on the first visit of the afternoon appellant made a demand for possession of the property, and when he returned in the evening he brought with him Mr. Beck who was, as he says, to

watch the property. The length of time Beck was there, or what he did in reference to assuming custody of the property, is not disclosed by the evidence. The evidence shows that on the following morning appellee was in possession and still retained the keys to the room where the property was located. When appellant, in the presence of Ballard, made demand for the keys he testifies that appellee asked him if the property had been sold to Ballard, and he replied, ''He will be in charge from now on.'' By this answer appellant did not answer appellee's question as to whether there had been a sale to Ballard. Under the answer it was reasonable for appellee to assume that there had not been a sale, but merely a taking of possession pursuant to the negotiations of the preceding day.

From these facts we conclude that when appellee finally surrendered possession, the act which he said he would do the evening before, he did not have knowledge of the fact that appellant had then sold the property to Ballard, and without knowledge of such fact there could not be a waiver by appellee.

The evidence does not disclose that there was any conversation relative to the amount remaining due on the notes, or as to what credit appellee would receive from the property. The notes were not surrendered, but retained by appellant and destroyed by his attorney when the case was on trial at a previous hearing. A waiver is the relinquishment of a known right, and there must be both knowledge of the existence of the right, and an intention to relinquish it. *Perin v. Parker,* 126 Ill. 201; *First Lutheran Church of Pontiac v. Rooks Creek Evangelical Lutheran Church,* 316 Ill. 196. In *Ferrero v. National Council of Knights & Ladies of Security,* 309 Ill. 476, the court said: ''To constitute a waiver it is essential that there is an existing right, benefit or advantage, knowledge, actual or constructive, of its existence, and an intention to re-

linquish it, and the burden of proof is upon the party claiming a waiver to prove that the one charged to have waived the right knew of the fact that entitled him to the right, and the facts upon which he relies for such waiver.'' We find that appellant has not proved, by the evidence in this case, that the appellee knew the facts of the sale to Ballard, and, not knowing such facts, his statements would not amount to a waiver.

The motion to direct a verdict for appellee did not, as to the matter of a waiver, raise any question for a jury. Whether certain facts had been proved, or not, must be ascertained by the jury, but whether or not they amount to a waiver, when proved, the court must decide. *Winnesheik Ins. Co. v. Schueller,* 60 Ill. 465. Appellee's motion for a directed verdict admitted, as true, the facts relied upon by appellant as constituting a waiver, and it therefore became a matter of law to be determined by the court. *Dwelling House Ins. Co. v. Dowdall,* 159 Ill. 179.

The court did not err in holding, as a matter of law, that there was no waiver, and since appellant admits that the steps he took towards acquiring possession of the property were under and pursuant to his rights under the mortgage it must be assumed that he made a private sale to Ballard, pursuant to the power given by the mortgage. There was no error in the granting of appellee's motion for a directed verdict, and the judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*